[No. 2981.]

ANNIE WILSON *v.* THE STATE.

1. DISORDERLY HOUSE—FORMER ACQUITTAL.—CHARGE OF THE COURT properly instructed the jury that a former acquittal upon a charge of vagrancy cannot prevail as a plea in bar of a prosecution for keeping a disorderly house.

2. SAME.—Courts do not take judicial cognizance of special laws, and a charge of the trial court, in assuming the existence of a city ordinance requiring all penal ordinances to be published ten days before their enforcement, was error.

3. SAME.—But if such an ordinance was shown to have existed, the defendant, in order to invoke its protection, would not be required to assume the burden of proving its publication. The presumption that it was legally published would obtain, and the burden of proving its non-publication would rest on the adverse party. In charging the converse of this rule the court erred. See the opinion on the question.

4. SAME—FACT CASE —See evidence *held* sufficient to sustain the plea of former acquittal.

APPEAL from the County Court of Dallas. Tried below before the Hon. R. E. Burke, County Judge.

The conviction was for keeping a disorderly house in the city of Dallas, and the punishment imposed was a fine of one hundred dollars.

City policeman John Overand was the first witness introduced by the State. He testified that he knew the defendant. She kept a disorderly house in the city of Dallas, Texas, from April 5, 1883, until May 25, 1883. The general reputation of that house was that it was a house of public prostitution. The inmates of the house were reputed to be common prostitutes. Several women, inmates of that house, were fined as common prostitutes during the months of April and May.

Cross-examined, the witness stated that he was a witness in the mayor's court against the defendant when she was tried in

that court, and acquitted, on the charge of vagrancy. That trial and acquittal were had on May 2, 1883. The testimony of the witness on that trial was in substance and effect the same as that given on this trial, and related to and covered the same period of time. The witness was also a witness against the defendant when she was, on the third day of July, 1883, tried before the mayor's court, and acquitted, upon the charge of unlawfully keeping a disorderly house. The testimony given by the witness on that trial was the same in substance and effect as that given on this trial, and covered and referred to the same period of time.

The testimony of Pat Sheehan, W. B. Maddox, W. H. Ramsay and Pat Mullen, witnesses for the State, was the same in substance and effect as that of the witness Overand.

The defendant then introduced the following evidence:

"Complaint filed in mayor's court of the city of Dallas, on the twenty-first day of May, 1883, and the verdict of the jury thereon, which complaint and verdict read as follows:

"In Mayor's Court, City of Dallas:

"THE STATE OF TEXAS, }
"COUNTY OF DALLAS. }

"Personally appeared before me, W. L. Cabell, Mayor of the City of Dallas, Pat Mullen, of lawful age, who, after being duly sworn, deposes and says that Annie Wilson, in the city of Dallas and State of Texas, on the twenty-first day of May, A. D. 1883, was unlawfully a vagrant by being then and there a common prostitute, contrary to the form of section 2 of an ordinance of said city, passed by the city council on the seventeenth day of March, 1881, and against the peace and good order of the city of Dallas.

"PAT MULLEN.

"Sworn to and subscribed before me this twenty-first day of May, A. D. 1883.

"W. L. CABELL, Mayor."

"We, the jury, find the defendant not guilty.

"V. F. PACE, Foreman."

The judgment of the said mayor's court on said verdict was as follows:

"May 22, 1883.

"CITY OF DALLAS ⎫
    "v.     ⎬ "This cause continued till May 28, 1883,
"ANNIE WILSON. ⎭ and jury called for by defendant."
"VAGRANCY.

"May 28, 1883.

"This case called for trial. Thereupon came the defendant and called for a jury. Thereupon a jury was impaneled and sworn. After hearing the evidence the jury returned their verdict 'not guilty.' Defendant discharged."

The defense then read in evidence the ordinance of the city of Dallas defining and punishing vagrancy as follows:

"An Ordinance defining and punishing vagrancy.

"SECTION 1. Every vagrant found in the city of Dallas shall, upon conviction, be fined in any sum not exceeding ten dollars.

"SECTION 2. The following persons are vagrants within the meaning of the preceeding section:   *   *   *

"4.   *   *   A common prostitute.   *   *   *   *

"SECTION 4. That this ordinance take effect from passage and publication.

"Approved March 17, 1881.

"JOHN J. GOOD, Mayor.

"Attest: J. B. HEREFORD, Secretary."

The defense then introduced in evidence the following complaint, filed in the mayor's court of the city of Dallas, on the twenty-seventh day of June, 1883, with the verdict on the same:

"In the Mayor's Court, City of Dallas·

"THE STATE OF TEXAS, ⎫
"COUNTY OF DALLAS." ⎭

"Personally appeared before me, W. L. Cabell, mayor of the city of Dallas, J. P. Keehan, of lawful age, who, after being duly sworn, deposes and says that Annie Wilson, in the city of Dallas, and State of Texas, on the 27 day of June, A. D. 1883, did unlawfully keep a disorderly house, the same being then and there kept by her for the purpose of public prostitution, and as a common resort for prostitutes and vagabonds, contrary to the form of section 1 of an ordinance of said city, passed by the city

council upon the 13th day of June, A. D. 1883, and against the peace and good order of the city of Dallas.

"J. P. Keehan.

"Sworn to and subscribed before me this the 27th day of June, A. D. 1883."

"W. L. Cabell, Mayor."

"We the jury, find the defendant not guilty.

"Geo. S. Fuqua, Foreman.

"July 3d, 1883."

The following judgment on said verdict was then read in evidence by the defendant:

"June 28th, 1883.

"City of Dallas,        Continued till June 30th, 1883.
v.
"Annie Wilson.        June 30th, 1883. Continued till
"Keeping Disorderly House.        July 3, by consent.

"July 3, 1883. This case being called for trial, thereupon came the defendant and plead ' not guilty.' Special plea, former trial on the 19th of April in the county court. Plea *lis pendens*, that two suits were pending in the county court when this suit was brought. Prosecuting attorney's return on demurrer to plea of former trial on the 19th of April. Answer to plea of former trial on 28th of May. Petition moved to change the date of filing complaint from 13th to 27th. Motion sustained, change made. Demurrer sustained to special plea of former trial April 19th, in the county court, and to the special plea of former trial on the 28th day of May, 1883, and also to plea of *lis pendens*. The jury returned a verdict of ' not guilty,' and the defendant was discharged.        *        *        *        *

"W. L. Cabell, Mayor.

"Attest: J. T. Carter, Act'g Clerk."

The defense then read in evidence an ordinance passed by the city council of the city of Dallas, on the thirteenth day of June, 1883, entitled, "An ordinance defining disorderly houses, and punishing the keepers of the same," approved June 13, 1883; also sections 2, 21, 7 and 62 of the amended charter of the city of Dallas, entitled, "An Act amendatory of an act approved August 9, 1876, entitled ' an act to incorporate the city of Dallas, and grant a new charter to said city,' approved March 3, 1883."

The motion for new trial raised the questions discussed in the opinion

*R. H. West,* filed an able brief and argument for the appellant.

*J. H. Burts,* Assistant Attorney General, for the State.

HURT, JUDGE.   The appellant, Annie Wilson, was indicted in Dallas county, Texas, for keeping a disorderly house, which indictment was filed in the county court of said county, on the twenty-sixth day of May, A. D. 1883.

In answer to the indictment, appellant, in addition to the plea of not guilty, pleaded former acquittal in the mayor's court of the city of Dallas, on two separate occasions, to wit: July 3, 1883, and May 28, 1883.  On the trial, the jury under the instructions of the court found appellant's pleas of former acquittal untrue, and found her guilty as charged, and assessed her punishment at a fine of one hundred dollars.

Upon the trial the court charged the jury as follows: "Under the defendant's plea of former acquittal of this offense, in the mayor's court of the city of Dallas, under complaint filed May 21, 1883, you are instructed that the same was for vagrancy, and cannot be pleaded by the defendant in bar of the prosecution in this case for keeping a disorderly house.  Under the other plea of former acquittal filed by the defendant, charging by affidavit filed in the mayor's court of the city of Dallas, on the twenty-seventh day of June, 1883, that she was the keeper of a disorderly house, as defined by section one of an ordinance of said city, passed on the thirteenth day of June, 1883, you are instructed that, under the charter of the city of Dallas, all ordinances which impose a penalty for their infraction must be published at least ten days before the same can be enforced, and it is incumbent on the defendant to show that the ordinance under which she was acquitted was published the requisite number of days, and in case she has failed to do so, then the plea can not be considered by you as a bar to this prosecution, and you will say in your verdict that you find the defendant's plea to be untrue."

That part of the above charge relating to vagrancy is correct. But that which relates to former acquittal for keeping a disorderly house is erroneous in two particulars.

1.   It assumes the existence of a city ordinance requiring all penal ordinances to be published ten days before their enforce-

ment. In this the court erred. Courts do not take judicial cognizance of special acts or laws.

2. Concede that such an ordinance had been introduced in evidence (which was not done), would defendant have been required to prove that the ordinance relating to keeping a disorderly house was published ten days before it could be enforced? Most evidently not. The presumption is that this ordinance had been published the requisite number of days, and it devolved upon the party whose rights were antagonized thereby to show that the ordinance had not been thus published.

Suppose an ordinance be enacted on the first day of June, 1884, and twenty years thereafter the city authorities prosecute a party for its violation, must the city prove its publication? Must this be done in all prosecutions? If so, in a great many instances the city would probably fail to make such proof. In these two respects the charge of the learned judge was erroneous, and very fatal to the plea of former acquittal.

Was the plea of former acquittal sustained by the proof? We are of the opinion that it was. However, the proof of that plea may have been as full, complete, and overwnelming as it is possible for evidence to make it, and still the jury could not have found it true under the charge of the court relating thereto.

For the errors in the charge the judgment is reversed and the cause remanded.

*Reversea and remanded.*

Opinion delivered June 21, 1884.